**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2593-17T2

IN THE MATTER OF THE
ADOPTION OF A CHILD BY
C.J.

_____

APPROVED FOR PUBLICATION

April 28, 2020

APPELLATE DIVISION

Submitted March 18, 2020 – Decided April 28, 2020

Before Judges Koblitz, Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FA-08-0012-17.

Reinherz & Reinherz, attorneys for appellant G.D. (David Anthony Huber, on the brief).

Lynn Marie Castillo, attorney for respondent C.J.

The opinion of the court was delivered by

KOBLITZ, P.J.A.D.

We write to emphasize that an attorney has an obligation to inform the court if he or she is not able to handle an assigned matter professionally due to a lack of expertise and inability to obtain sufficient knowledge to represent the client effectively, and is also unable to retain a substitute attorney knowledgeable in the area. We sua sponte determine that appellate counsel was ineffective and new appellate counsel must be assigned in this contested

stepparent adoption matter. We therefore adjourn this appeal to appoint substitute counsel. Additionally, an adjournment of this time-sensitive contested adoption is necessary because a transcript of the trial court's opinion was not provided, nor was the seeming lack of a decision mentioned by either counsel in briefing.

The biological mother is appealing. She is entitled to counsel under the Supreme Court case of In re Adoption of J.E.V., 226 N.J. 90, 94 (2016). She was represented at trial by the Office of Parental Representation in the Office of the Public Defender (OPD). The OPD determined that due to a lack of specific statutory authority and insufficient resources, it would no longer represent parents in contested adoptions. Our Clerk's Office assigned an appellate attorney from the Madden[1] list. The matter was also remanded to the trial court to determine who would provide the transcripts. The trial judge directed respondent to provide the transcript. Respondent ordered a transcript of the three trial days, but not the judge's opinion, although respondent's counsel was the trial attorney and was present for the decision on January 5, 2018.

---

[1] Madden v. Delran, 126 N.J. 591, 605-06 (1992).

A-2593-17T2

After being informed by mail on three separate occasions of numerous defects, counsel was permitted to submit his brief as is, more than a year after the brief was originally due. In his appellate brief, counsel argued that respondent had not demonstrated that the Division of Child Protection and Permanency (DCPP) made reasonable efforts to reunite the biological mother and her child. See N.J.S.A. 30:4C-15.1(a)(3). He did not mention the controlling stepparent adoption statute. N.J.S.A. 9:3-46. When respondent's brief pointed out the correct controlling statute, counsel did not submit a reply brief. And finally, appellate counsel did not raise the issue that the record contained no judicial findings.

The final day's trial transcript reveals that the judge informed the parties he would "look to have [his] decision by . . . the 5th of January." Counsels' "option would be to be present or to attend by phone or to just wait for the signed order from the [c]ourt." The order of adoption was entered on January 5, 2018, the same date the judge placed his conclusions of fact and law on the record.

Neither party sought appellate oral argument. When we reviewed the briefs and transcripts we noticed that the crucial transcript of the January 5

A-2593-17T2

decision had not been ordered, and directed that it be ordered on an expedited basis.

A parent who may lose his or her parental rights in a contested adoption has the right to counsel. J.E.V., 226 N.J. at 94. In J.E.V. our Supreme Court said:

> The very reasons that call for a lawyer to be appointed also favor the appointment of attorneys with the experience to handle these matters. Contested adoption proceedings raise important substantive issues and can lead to complicated and involved hearings. The Office of Parental Representation in the [OPD] has developed expertise in this area from its fine work in state-initiated termination of parental rights cases. Without a funding source, we cannot direct the office to take on an additional assignment and handle contested cases under the Adoption Act. See [Crist v. N.J. Div. of Youth & Family Servs., 135 N.J. Super. 573, 575-76 (App. Div. 1975)].

> In the past, as we noted in Pasqua, "the Legislature has acted responsibly" and provided counsel for the poor when the Constitution so requires. [Pasqua v. Council, 186 N.J. 127, 153 (2006).] For example, after Crist, the Legislature enacted N.J.S.A. 30:4C-15.4(a), which directs judges to appoint the [OPD] to represent indigent parents who ask for counsel in termination of parental rights cases under Title 30. Once again, we trust that the Legislature will act and address this issue.

> In the interim, we have no choice but to turn to private counsel for assistance. We invite volunteer organizations to offer their services, as pro bono

A-2593-17T2

> attorneys have done in other areas. <u>See, e.g.</u>, <u>In re Op. No. 17-2012 of Advisory Comm. on Prof'l Ethics</u>, 220 N.J. 468, 469 (2014). Until the Legislature acts, we may need to assign counsel through the Madden list, which is not an ideal solution.
>
> [<u>J.E.V.</u>, 226 N.J. at 113 (citations omitted).]

The right to counsel includes the right to appellate counsel. <u>N.J. Dep't of Children & Families v. L.O.</u>, 460 N.J. Super. 1, 19 (App. Div. 2019). All New Jersey attorneys are required to provide pro bono representation. "New Jersey's Rules of Professional Conduct specifically address pro bono service." <u>In re Op. No. 17-2012</u>, 220 N.J. at 485. RPC 6.1 provides that "[e]very lawyer has a professional responsibility to render public interest legal service." The fair administration of justice as well as indigent litigants who are entitled to counsel rely on the generous and diligent efforts of pro bono counsel, both volunteer and assigned. Lawyers are ethically bound to provide representation that is reasonably diligent and not grossly negligent.[2] RPC 1.1 (a); RPC 1.3. This is true whether counsel is financially compensated or is providing pro bono representation. "The Advisory Committee on Professional Ethics has described RPC 1.1 as the 'cornerstone for the rest of the rules.' Advisory

---

[2] By determining counsel was ineffective we render no opinion as to whether the representation provided constitutes gross negligence. <u>See</u> RPC 1.1(a).

Comm. Op. 671 (Apr. 5, 1993). In that opinion, the Committee concluded that the duty of competence was 'fully applicable' to a pro bono representation." Kevin H. Michels, New Jersey Attorney Ethics, ch. 14.2-1(b) (2020).

We understand that most lawyers are not appellate experts. Few lawyers have experience in contested adoptions. We have adjudicated fewer than a dozen contested adoption appeals statewide since J.E.V. was decided in 2016. Nonetheless, assigned counsel was obligated to educate himself as to the law. See State v. Finneman, 458 N.J. Super. 383, 388 (App. Div. 2019). The "Resources" section of the Judiciary website's "Attorneys" page has a "Pro Bono" link to educational material for pro bono assignments defending domestic violence contempt cases, appealing municipal court convictions, representing defendants at parole revocation hearings and representing birth parents in private contested adoption cases.[3]

In 1992 when establishing the Madden list for municipal court assignments, our Supreme Court said:

> We leave it to the municipal court judges to direct counsel, who will usually inform them of their concerns, if any, about their competency, to provide substitute counsel when appropriate, a system

---

[3] The "Pro Bono" link also leads to the statement that the trial courts do not appoint trial counsel from the Madden list in private contested adoption cases.

A-2593-17T2

explicitly recognized under the old Rules. Ultimately, however, if the municipal court judge concludes that defendant will not receive effective assistance of counsel, the judge's obligation will be to select other counsel. No such selection shall occur, however, until the court concludes that that counsel is unable to obtain a substitute. In almost all cases that will depend upon his or her financial ability to do so.

[Madden, 126 N.J. at 608.]

It was appellate counsel's obligation to review the New Jersey Courts website material concerning contested adoptions and Part II of the Court Rules covering appeals. Alternatively, counsel could have retained substitute counsel with expertise in this area. See ibid. If counsel is unable to obtain sufficient knowledge or retain counsel with expertise, counsel has the ethical obligation to inform the appointing court of his or her inability to handle the case assigned. See ibid.

Competent counsel is particularly crucial when a parent's "invaluable right to raise a child" is at stake due to the extreme importance of the litigation. J.E.V., 226 N.J. at 94. We have an obligation to ensure that the welfare of the child is protected by way of a fair process with competent counsel. As our Supreme Court stated in J.E.V., a self-represented parent is not able to litigate as well as a lawyer. Id. at 109-10. But that assumes counsel is not ineffective. Because the parent is extremely unlikely to be in a

position to gage the effectiveness of appellate counsel, we must intercede when appellate counsel's efforts are clearly substandard.

Our Supreme Court has "explained that [Rule] 2:10-5 'allow[s an] appellate court to exercise original jurisdiction to eliminate unnecessary further litigation, but discourage[s] its use if factfinding is involved.'" Price v. Himeji, LLC, 214 N.J. 263, 294 (2013) (alterations in original) (quoting State v. Santos, 210 N.J. 129, 142 (2012)). Exercising original jurisdiction to avoid further delay, we sua sponte determine that appellant's counsel is ineffective.

Generally, a litigant in a termination of parental rights case must demonstrate that "(1) counsel's performance must be objectively deficient— i.e., it must fall outside the broad range of professionally acceptable performance; and (2) counsel's deficient performance must prejudice the defense." N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 307 (2007) (adopting standard for ineffective representation set forth in Strickland v. Washington, 466 U.S. 668, 694 (1984), and adopted in State v. Fritz, 105 N.J. 42, 58 (1987)). The same standard applies to appellate counsel. See N.J. Div. of Child Prot. & Permanency v. R.L.M. (In re R.A.J.), 236 N.J. 123, 153 n.3. If, as here, appellate counsel's representation is severely lacking, it is comparable to a total lack of representation: a structural failure in the process

where the litigant need not demonstrate prejudice.  Similarly, "[d]eprivation of counsel of choice is considered a 'structural error' not subject to harmless error analysis because the consequences of deprivation are 'necessarily unquantifiable and indeterminate.'"  State v. Kates, 426 N.J. Super. 32, 44 (App. Div. 2012) (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006)).

In a five-page brief, relying on the inapplicable statute N.J.S.A. 30:4C-15.1, appellate counsel argued that DCPP had not provided "reasonable efforts," to reunify his client and her daughter.  He cited to no cases in his brief.  He also did not exercise his client's right to reply to respondent's brief, which pointed out that the matter involved the best interests of the child under the contested private adoption statute rather than the incorrect statute relied on by appellate counsel, which controls the termination of parental rights when instigated by the State.  Appellate counsel also did not question the lack of judicial findings in the transcripts supplied.  This level of representation is tantamount to a total lack of appellate counsel, a structural defect.  We adjourn this matter to appoint new appellate counsel, and also to ensure that the parties have an opportunity to review the transcript of the trial court's findings and submit new briefs.

A-2593-17T2

Adjourned.  The clerk will set a new expedited scheduling order.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10                                              A-2593-17T2